# Exhibit 1

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Attn:
TS No. 09-0100708

Title Order No. 09-8-284353

---

APN No.:0210-451-49-0-000

# NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/14/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by MI J YUN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, dated 04/14/2005 and recorded 04/22/2005, as Instrument No. 2005-0282376, in Book , Page , ), of Official Records in the office of the County Recorder of SAN BERNARDINO County, State of California, will sell on 11/09/2009 at 12:00 PM, At the North Arrowhead Avenue entrance to the County Courthouse, 351 North Arrowhead Avenue, San Bernardino, CA 92401

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be:  9530 SPRINGBROOK COURT, RANCHO CUCAMONGA, CA  91730. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $407,913.84. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

 In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: /S/ Title Officer

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt.  Any information obtained will be used for that purpose.

*Form mlgnos (07/01)*

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

THIS DOCUMENT IS BEING SENT TO YOU
IN ACCORDANCE WITH CIVIL CODE
SECTION 2934a.

Attn:
TS No. 09-0100708

Title Order No. 09-8-284353

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# AFFIDAVIT OF MAILING
# FOR SUBSTITUTION OF TRUSTEE BY CODE

TS#:    09-0100708

Trustor: MI J YUN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

I, MANJIT GHATAURA          , TRUSTEE SALE OFFICER, declare: That I am an officer, agent or employee of RECONTRUST COMPANY, N.A., whose business address is 1800 Tapo Canyon Rd., CA6-914-01-94, SIMI VALLEY, CA 93063.

I am over the age of eighteen years; On 10/20/2009, by Certified and First Class mail, enclosed in sealed envelopes with postage fully prepaid, I caused to be deposited in the United States Mail copies of the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924b of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/20/2009

/S/   MANJIT GHATAURA

Form affdvtsub (08/03)

RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

**THIS DOCUMENT IS BEING SENT TO YOU IN ACCORDANCE WITH CIVIL CODE SECTION 2934. THE ORIGINAL OF THIS DOCUMENT HAS CONCURRENTLY BEEN SENT FOR RECORDING WITH THE COUNTY RECORDER**

ATTN:
TS No.  09-0100708

TSG No.  09-8-284353

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, MI J YUN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, CTC REAL ESTATE SERVICES was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 04/14/2005 recorded on 04/22/2005 as Instrument No. 2005-0282376 in Book  Page of Official Records of  San Bernardino County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY,  CA  93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:                                    MORTGAGE ELECTRONIC REGISTRATION
                                               SYSTEMS, INC.

State of:    California                        )

County of: _____ )    BY: /S/ Beneficiary or Investor

On _____ before me, _____ , notary public, personally appeared _____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

*Form mlngsub (01/09)*

# Exhibit 2

Prepared by: TIFFANY MARTELL

LOAN #: 96579040

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

| APRIL 14, 2005 | ONTARIO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

9530 SPRINGBROOK COURT, RANCHO CUCAMONGA, CA 91730
[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 339,600.00     (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed     115     percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is **Countrywide Bank, a Division of Treasury Bank, N/A.**
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the **first**          day of     JUNE, 2005          , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice..

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO & 40/100          percentage point(s)     2.400 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than     9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3.   PAYMENTS

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the **first**          day of each month beginning on JUNE 01, 2005          . I will make these payments every month until I have paid all the Principal and interest and any

● PayOption ARM Note - MTA Index
2E306-XX (12/04)(d)

Page 1 of 4

*14 J*







LOAN #: 96579040

other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 01, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,092.29          , unless adjusted under Section 3(F).

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first          day of JUNE, 2006          , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN          percent (   115 %)  of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:
(i)    **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii)    **Fully Amortized Payment:**  the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.
(iii)    **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

LOAN #: 96579040

These Payment Options are only applicable if they are greater than the Minimum Payment.

**1.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000  % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

● **PayOption ARM Note - MTA Index**
2E306-XX (12/04)

*M J*

LOAN #: 96579040

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



MI J. YUN                                                                        - Borrower

_____ - Borrower

_____ - Borrower

_____ - Borrower

• PayOption ARM Note - MTA Index
2E306-XX (12/04)

# Exhibit 3

STATE OF CALIFORNIA -- BUSINESS, TRANSPORTATION AND HOUSING AGENCY

**DEPARTMENT OF CORPORATIONS**
Complaint Form
Page 1 of 2

# Complaint Form

1. **Your Information** (type or print clearly):

   ☒ Mr.    ☐ Miss    ☐ Ms.    ☐ Mrs.

   Devon Wood, Jean Keating
   Print Your Full Name (First, MI, Last)

   28945 Erickson Ct. Highland CA, 91730
   Your Home Address (Street, City, State and Zip Code)

   9140 Haven Ave. #120 Rancho Cucamonga CA, 91730
   Your Business Address (Street, City, State and Zip Code)

   | Business Phone | Home Phone |
   |---|---|
   | 909-855-4757 | Royalllc@yahoo.com |
   | Daytime Phone | E-mail Address |

   Your age (please check one):    ☒ Under 50    ☒ 50 – 64    ☒ 65 and Over

   ---

   **For Military Personnel Only:**

   Branch of Service                    Rank

   Base Address (where you are stationed)

   ---

2. **Information on the individual or organization about which you have a complaint:**

   IndyMac/OneWest Bank   Loan# 3002179459,1009463272, 1009332469
   Full Name of Business, Company, Firm, or Person

   888 East Walnut St.
   Street Address of Business, Company, Firm or Person (include Room #, Suite #, or Apt. #, if any)

   Pasadena, CA 91101

   | City | State | Zip Code | Business Phone |
   |---|---|---|---|

   customer service Dept , CFO Steve Thompson
   Full Name of Salesperson, Agent or Other Representative (if applicable)

   loss litigation Dept Rachel Hofmann
   Employer of Salesperson, Agent or Other Representative (if different than Business Name above)

DOC 29 (Rev. 11/08)

STATE OF CALIFORNIA -- BUSINESS, TRANSPORTATION AND HOUSING AGENCY

## DEPARTMENT OF CORPORATIONS
Complaint Form
Page 2 of 2

3.  **Have you already directly contacted the business, firm or individual(s) regarding your complaint?**

    ☒ Yes          ☐ No

    If **yes**, include the names of the persons contacted and the dates you contacted them; attach **copies** of all documents relating to this correspondence. If necessary, attach extra pages.

| Name of Person(s) Contacted | Date(s) Contacted |
|---|---|
| customer service, Chief Financial Officer | various, Oct 8, 2009 |
| Rachel Hofman(loss Litigation, kalamazoo) | June 12, 2009 |

    What was the result of the contact (if any)?

4.  **Have you filed a lawsuit or arbitration regarding this complaint?**
    ☒ Lawsuit          ☐ Arbitration          ☐ Neither

5.  **Briefly describe your complaint.** Answer the questions of "who," "what," "where" and "when." Include the full names, addresses, and telephone numbers of any witnesses present during the transactions, and dollar amounts invested and/or lost. **If necessary, attach extra pages.**
    Fraud, Money Laundering, Misrepresentation,unlawful conversion, conveyance,

    civil RICO, security fraud, criminal act, violation of California penal

    code 484, violation of California Commercial code 506,506(a)(b), civil code

    See attached letter to Security Exchange Commission.

6.  **What do you believe would be a fair resolution to this matter?**
    full refund of any payments, full reconveyance, release of any lien.

7.  **How did you find out about the Department of Corporations?**
    ☐ Seniors Against Investment Fraud (SAIF)          ☐ Troops Against Predatory Scams (TAPS)
    ☒ Other (please state) Internet

8.  **Attach a copy of all written correspondence and documentation related to your complaint.**

9.  **SIGNATURE**
    In filing this complaint, I agree the information provided is true and correct to the best of my knowledge and that the information may be used by the Department to further investigate my complaint. I understand that the Department of Corporations' investigations are generally confidential and in some cases it is necessary for the Department to send my complaint to the licensee.

    Nov 10, 2009
    Date                          Signature

DOC 29 (Rev. 11/08)

U.S. Security and Exchange Commission
Office of Inspector General
100 F Street, NE
Washington , DC 20549-2

John C. Dugan
Comptroller of the Currency
Independence Square 250 E Street, S.W.
Administrator of National Banks
Washington, DC 20219

Department of Corporations
Commissioner Preston Durauchard
Consumer Services Office
1515 K Street, Suite 200
Sacramento, CA 95814

California Attorney General
Edmund G. brown Jr
California Department of Justice,
P.O. BOX 944255
Sacramento, California 94244-2550.

November 12, 2009

Dear Sirs:

We are writing you concerning the following mortgage loan accounts and our signed promissory notes with Countrywide Home Loan Inc. /Bank of America and Indymac/OneWest Bank FSB:

Indymac/One West Bank Loan Numbers are 3002179459, 1009463272, and 1009332469;

Countrywide Home Loans Inc./Bank of America  Loan Number is 9659040.

Bank of America/Countrywide Home Loans Inc. and Indymac/One West Bank FSB sent us copies of the promissory notes that were signed by our attorney in fact. They are **stamped and endorsed** *pay to the order of*  *"without recourse"* and endorsed by **the Vice Presidents** of Countrywide Home Loans Inc. and Indymac/OneWest Bank, these endorsements are disclaimers of  liability of the drawers/makers to pay the drafts under §§ 3414 (e) and 3104 (e) of the California Commercial Code and constitutes an acceptance by Countrywide  Home Loans Inc./Bank of America and Indymac/OneWest bank and discharges the drawers/makers under § 3414 (c) of the California Commercial Code. The Promissory Notes as liability instruments were converted and treated as drafts under § 3104 (e) of the California Commercial Code by the endorsement  *Pay to the order of  by the Vice Presidents of Countrywide Home Loans Inc./Bank of America and Indymac. (See pooling and service agreement)*

Those promissory notes, which are security instruments, were *deposited*  in  demand deposit accounts under title **12 § 1813 l 1** which is the equivalent of money or cash under FASB [ **Financial Accounting Standards Board ] Statement of Cash Flows # 95 page 63 Note # 1,** by Countrywide Home Loans Inc./ Bank of America and Indymac/OneWest Bank.  The funds

1

created by our deposited promissory notes/security instruments were used to pay the sellers in full. The mortgage loans have been satisfied.

Our promissory notes mature in thirty years and as you are well aware security instruments which matures beyond nine months *are not* notes or negotiable instruments under **§ 3104** of the California Commercial Code and title **15 § 78c (a) (10)** and cannot be deposited and monetized. Securities are to be sold as mortgaged or asset backed securities to investors or certificate holders.

Our original promissory notes with Countrywide Home Loans Inc., Bank of America and Indymac/OneWest Bank were deposited, monetized and sold over and over again fraudulently and without our knowledge or consent. Countrywide Home Loans/Bank of America and Indymac/OneWest bank have profited substantially from the sale of our promissory notes/securities, and they have not paid us any interest or dividends from the sale of our promissory notes and they are not holders in possession of the notes/securities and are not persons under § 3301 of the California Commercial Code, entitled to enforce the instruments under the pooling and servicing agreement.

Our signatures on the promissory notes created the funds Countrywide Home Loans/Bank of America and Indymac/OneWest Bank used to profit substantially from the sale of our promissory notes/securities.

Also the California Legislature passed § 2923.6 of the California Civil Code based on the Pooling and Servicing agreements between the Pooling and Servicing entities Countrywide Home Loans Inc., Bank of America, Indymac/OneWest Bank and the Investors or Certificate Holders, which was based on Loan modifications to give the Investors or Certificate Holders as undisclosed third parties, a remedy on the Capital they put up as cash flow claims to the mortgage payments as identified in the 424b5 Prospectus for the first and last quarters of the Loan periods and who by this investment contract are the lenders in fact and not Countrywide Home Loans Inc./Bank of America or Indymac/OneWest bank.

There are also Criminal Violations and Sanctions involved do to the use of the Loan Documents for Investment Purposes to undisclosed Third parties, instead of Mortgage Loans in violation of §§ 2985.3 and 2985.4 of the California Civil Code and §§ 506, 506 (a), and 506(b) of the California Penal Code. It also apparent from Countrywide Home Loan Inc./Bank of America and Indymac/OneWest Bank's own records, including but not limited to the pooling and servicing agreements, that they were Selling and Transferring Unregistered, Unqualified Securities in violation of §§ 25120, 25121 and 25122 of the California Corporations Code and title 15 § 77fff of the Securities Exchange Act of 1933.

It has also come to our attention through research and exculpatory evidence that Countrywide Home Loans, Bank of America and Indymac/OneWest Bank have been "Double-Funding" which involves the mortgage originators Countrywide Home Loans Inc., Bank of America and Indymac/OneWest Bank sending simultaneous funding requests for the same loan to two different warehouse lenders. Both warehouse lenders, unaware of each other, sent funding for the

loan to the title companies specified by the mortgage originators. The mortgage originator Countrywide Home Loans Inc., Bank of America and Indymac/OneWest Bank then disburse the money from one lender to the borrower, while directing the title company to wire the money received from the other lender to mortgage originator's bank account. The mortgage originators, Bank of America, Countrywide Home Loans Inc. and Indymac/OneWest Bank then provide fabricated mortgage documents to the warehouse lenders that falsely represented that the lender's funds had, in fact, been used to finance borrower loans. Assignment Fraud involves modifications to the original loans where the name of the bank who actually owns the note is changed on execution of the Loan Modification Agreements. The problem with these "modifications" (actually new loans with new "lenders") is that the old loans remain unaffected. The existing cloud on title to the property, the mortgage deeds (or deeds of trust), the notes, the obligations, the purported assignments etc. are being compounded by attempts to allow impostors to foreclose on the mortgages, collect on the notes, modify the loans, or approve short sales. The time bomb is title where these securitized loans were recorded, foreclosed, modified or sold. The parties (other than the borrowers and possibly the Trustees on the Deed of Trust) had actual knowledge that the "lenders" was not the Lenders, the terms of the obligations were already changed at the time of closing, the appraisal was false, the underwriting was negligent or fraudulent, the Good Faith Estimate was by definition rendered neither in good faith nor even close to an accurate estimate, and the list goes on and on.

In determining whether these particular loans are part of a "double-funding" or "double-selling" scheme, **examiners and forensic accountants must look for as evidence that the mortgage originators** Countrywide Home Loans Inc., Bank of America and Indymac/OneWest Bank are engaging in this scheme and participating in a pattern of deception, forgery and fraud. Once demonstrated, these indicators inevitably point to fraudulent affidavits and assignments of mortgages filed in the public records.

As you examine their loan documents you should be looking for the following:

1. Loan originators, servicers and their lawyers forge documents with "squiggle marks" that are not the marks, initials or signatures of the actual officer that is notarized to be the signatory.

2. Signatures, initials or "squiggle marks" differ for the same signatory from document to document.

3. Squiggle marks and full signatures that are diametrically opposed to the known signature of the signatory.

4. Pre-stamped assignments and notary signatures on assignments, affidavits and proof of claims.

5. Back-dating of dates on assignments and signatures of officers dating years after either a company is no longer in business or the officers are no longer with the company.

6. Endorsements of Promissory Notes with "Without recourse" Pay to the Order of Vice President of Country wide Home Loans, Bank of America and Indymac.

7. Any material alterations of Notes discharges the existing obligations under § 3407 (b) (c) of California Commercial Code.

8. All of the above Loans are HUD loans as identified by the HUD Residential Loan Applications 1003 and Security Instruments 3005, which are insured by FHA the Federal Housing Administration under title 12 § 1709. This means that Fannie Mae, Ginnie Mae and Freddie Mac paid off the Investors or Certificate Holders, when the loan went into default per the Pooling and Servicing Agreement and this means that Countrywide Home Loans, Bank of America and Indymac are getting paid four times on each loan, once at closing by depositing the Promissory Note, Second by Federal Housing Administration by an Insurance Policy Claim, third by the Investors and trust Funds and fourth by resale of the Home after foreclosure, this is RICO, Criminal Racketeering, Money laundering, Usury, Tax Invasion under § 7201 of title 26 through the use of securitization and off balance sheet financing and is a violation of the Anti Trust Laws.

9. These are HUD Loans as identified in §§ 3755 and 3756 of title 12 which have not been withdrawn, dismissed or terminated by the Secretary of HUD, so the alleged Trustee RECONTRUST COMPANY, NDEx West LLC does not have venue, jurisdiction or authority to foreclose.

10. All primary and secondary loan insurance claim and how the insurance money was paid to the banks and distributed due to alleged loan payment default which, the insurance premium was paid by the interest premium.

We are requesting an immediate and thorough investigation into this matter. Upon completion of your investigation please notify us immediately of your findings and of the necessary steps that we need to take to collect the funds rightfully due us.

Sincerely,

_____        _____        _____
Jean    Keating                        Devon    Woods                        MI J Yun


CC:  KEN LEWIS CEO;
     BANK OF AMERICA/COUNTRYWIDE HOME LOANS
     100 North Tryon Street Charlotte, North Carolina [28202].

CC: RECONSTRUCT COMPANY  (TS# 09-0100708)
    1800 Tapo Canyon Rd., CA6-914-01-94
    SIMI VALLEY, California [93063].

CC: Steve Thompson (CFO)
    OneWest Bank Group LLC
    888 East Walnut St.
    Pasadena CA, 91101

CC: OneWest Bank FSB
    IndyMac Mortgage Services
    6900 Beatrice Drive
    P.O Box 4045
    Kalamazoo MI, 49003-4045

CC: TRUSTEE:
    Deutsche National Banking Association
    Trust Administration GS0502 as spelled out at page 43 of 424b5 Prospectus
    1761 East St. Andrew Place,
    Santa Ana, California 92705-4934

CC: *MERS Headquarters* Address.
    1595 Spring Hill Road Suite 310
    Vienna, VA 22182.
    United States Phone: 800-646-6377. Fax: 703-748-0183.

CC: NDEx West LLC
    15000 Surveyer Blvd, Suite 500
    Addison TX 45001



**Home Loans**

Customer Service Department, CA6-919-01-41
450 American Street
Simi Valley, CA 93065-6298

November 5, 2009

Maria Johnson
9140 Haven Avenue
Suite 120
Rancho Cucamonga, CA 91730

Re:     Bank of America Home Loan account ending: 9040
        Borrower: Mi J. Yun
        Property Address: 9530 Springbrook Court, Rancho Cucamonga, CA 91730

Dear Ms. Johnson,

Thank you for contacting our office with your correspondence dated October 15, 2009 and November 2, 2009. Although your correspondence purports to serve as a "qualified written request," the information requested in your correspondence goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605(B) ("QWR").

The concerns referenced in your correspondence were forwarded to my attention for review and response.

In your letter, you expressed dissatisfaction with various aspects of the origination of the above-referenced loan. You requested Bank of America to provide you with numerous copies of documents relating to the origination of the subject loan and a loan history including fees assessed to the subject loan.

As you may be aware, a QWR is written correspondence, which includes a statement of specific reasons why the borrower believes that their account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made, or to explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for obtaining information regarding the lender's general business practices, its relationship with government sponsored entities, its mortgage servicing and accounting computer systems, its trade secrets or any other proprietary information, nor can it be used to support a phishing expedition for documents that may support a claim or as a pretext designed to force the lender to accept a modification request rather than incur the expense of responding. This is especially true where, as is the case with your "QWR", the only reason given for the request are vague references to your general concerns regarding "potential fraudulent and deceptive practices," without reference to a single specific issue of concern regarding the loan.

Although your "QWR" is overly broad, unduly burdensome and not in conformity with 12 U.S.C. §2605, we did review our file documents in an attempt to obtain information responsive to those of your inquiries which were consistent with 12 U.S.C. §2605. The results of this review of your loan files are set forth below and in the documents attached hereto. Below, I have provided a summary of the subject loan. Please note that all other requests are declined as they seek documentation that goes beyond that which is available through a Qualified Written Request made under 12 U.S.C. §2605(B).

Letter to Maria Johnson
October 29, 2009
Page Two (2)

Your allegations of violations of the Real Estate Settlement Procedure Act ("RESPA") and/or Truth-in-Lending Act ("TILA") are very vague. Bank of America is unable to research these allegations until such time that further clarification is provided. Signed copies of the available documents pertaining to the origination of the subject loan will be mailed to you under a separate cover. The signatures on these documents confirm the borrowers received, read, understood, and agreed to the terms and conditions contained within each document. If the borrowers had concerns or were not in agreement to the terms and conditions, they were under no obligation to sign the loan documents or continue the loan process.

As you know, Countrywide/Bank of America did not originate the subject loan (please refer to the loan documents provided under separate cover). As the purchaser of a closed loan, Countrywide/Bank of America is not responsible for any misunderstanding or lack of communication between the borrowers and the originating entity.

A *Loan Transaction History Statement* was also mailed to you under separate cover that provided a detailed outline of transactions associated with this loan. Please note that the statement provided pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late fees assessed and paid. The *Loan Transaction History Statement* is designed to be user-friendly and there are no codes or terms used that require specific definitions. Additionally, I have enclosed a breakdown of fees assessed to the subject loan since inception. Please note that paid late charges will be reported to the IRS as interest paid.

Our records reflect that the subject loan is presently due for the May 2008 through November 2009 installments, Please contact the Home retention Department at 1.800.669.0102 for the amount to bring the account current.

Please refer to the documents mailed under separate cover for details regarding the assessment of late charges, forced placed insurance and inspection fees.

The owner and servicer of this loan is Bank of America, whose address is 225 W. Hillcrest Dr., Thousand Oaks, CA 91360.

For information regarding the Mortgage and Assignments, you may contact Mortgage Electronic Registration Systems, Inc. ("MERS") directly at 1.888.679.6377, or you may visit the MERS website at www.mers-servicerid.org. Please see the *Deed of Trust* for details.

Annual escrow statements are issued to customers as scheduled. Copies of the issued statements are not retained; however, the information is available in electronic format for associates to discuss with our customers during customer service telephone or correspondence inquiries, or when customers view their loan information on the website. Below, I have provided a breakdown of the most recent escrow analysis completed on August 12, 2008, effective with your October 1, 2008, installment:

| Description | Amount |
| --- | --- |
| Principle and Interest | $1,356.95 |
| Homeowners Insurance Payment | $117.95 |
| Projected Shortage | $167.05 |
| Reserve Requirement (16.6%) | $19.57 |
| Total | $1,661.49 |

A Lender Placed Policy was purchased on the subject loan on November 6, 2008 in the amount of $2,645.00.

**COUNTRYWIDE/BANK OF AMERICA**
**P.O. BOX 5170**
**Simi Valley, CA. 93062**

**Reconstruct Company**
**1800 Tapo Canyon Rd.**
**Simi Valley, CA. 93063**

November 2, 2009

Loan# 96579040

## Constructive Notice of Criminal Activity

### Notice to Agent is Notice to Principal
### Notice to Principal is Notice to Agent

This is a constructive notice that Reconstruct Company and Countrywide/Bank of

America is in committing a criminal act in accordance with California penal code Section

484. US Code Title 18 § 1348 to foreclose on subject property located at:

9530 Spring Brook Ct. Rancho Cucamonga Ca, 91730

Demand to cease foreclosure activity. If you continue to commence your foreclosure,

you are admitting that you are in violation of law and agree to pay damages to me.

_____
Jean Keating, Devon Wood

1

**COUNTRYWIDE/BANK OF AMERICA**
**P.O. BOX 5170**
**Simi Valley, CA. 93062**

**Reconstruct Company**
**1800 Tapo Canyon Rd.**
**Simi Valley, CA. 93063**

November 11, 2009

RE: COUNDTRYWIDE/BANK OF AMERICA LOAN NO. 96579040

**Good Faith Request for Debt Validation/Notice of Audit Notice of TILA Violation (12CFR**
**§226.18(d) (1), 12CFRCalifornia State Fin. Code §22317,17000, 22318,10 CCR §1457,1458.**
**Notice of Criminal Act under California Penal Code 484, USC Title 18 § 1348.**

Attention all concerned: A Copy of Deed of Trust isn't sufficient to enforce the note IAW with federal rule 17 and rule 19. See Hwang vs. IndyMac Bank Case No.: LA08-15337SB (California)

Your pooling and servicing agreement under 424b5 prospectus show that you do not owned the note nor has any right, title, or interest to commence foreclosure.

1.  Based on information under your pooling and servicing agreement, we have failed to see how COUNTRYWIDE/BANK OF AMERICA is the holder of original promissory note and has right to collect debt. If you are the note holder, please make an arrangement for me to see this original note and audit your account under above account number at your local (closest to home address) branch office.

    It also shows that Mortgage Electronic Registration System is just a nominee and has no rights, title and interest to this mortgage.

2.  In accordance with your pooling and servicing agreement, 424b5 prospectus, you are not in possession of the note, but supposedly Deutsche Bank National Trust Company is which I don't have contract with.

3.  Where is the proof of contract that I have agreed to participate on Securitization of the note?

4.  Where is the proof that the promissory note that signed is the negotiable instrument that the maturity date of that note is greater than 9 month?

5.  What gives COUNTRYWIDE/BANK OF AMERICA rights to collect this debt?

6.  Where in your pooling and servicing agreement show that your company is the lender?

This is a Request for Good Faith Validation of Debt. Please take Notice that Devon Wood, Jean Keating is not refusing to pay, however, needs the information set forth in this request to work with COUNTRYWIDE HOME LOAN/BANK OF AMERICA. I would like to settle as

soon as possible and I may have a counterclaim to set off the disputed balance. With that said, please answer additional following questions related to this disputed account in affidavit under the penalty of perjury and return them to me within Thirty (30) days (Plus Three (3) days for mailing) of receipt of this request, via the Notary Public named below.

1) Please provide your name, occupation and title, and mailing address.
2) Please provide a copy of front and back of the promissory note that show pay to the order of with recourse as per your pooling and servicing agreement.
3) Please provide all recorded your company's rights, title, and interest to this mortgage note.
4) Please provide authorization from MERS, and Secretary of HUD to commence foreclosure.
5) Please provide where and how MERS has any right, title, and interest to this mortgage.
6) Identify the source of funds in the account that is the subject matter of this mortgage/loan account.
7) Produce all records, reports and memoranda relating to the source of funds relating to this disputed account and list all other sources of information such as computer file names, names of databases or locations at which related information is located or accessible, and any identifiers to such information.
8) What was the account number of the account in which the funds were held prior to the opening of the account that is the subject matter of this demand for payment of mortgage?
9) Who was the owner of each account or, list those individuals having signature rights to each account?
10) Identify the account that was debited when the disputed account was created.
11) Who was the owner of each account, or list those individuals having signature rights to each account?
12) Identify the source of funds that created the disputed account.
13) Did the funds for the disputed account originate from another account or lending institution?
14) List the names and addresses of all lending institutions from which any funds were purportedly originated.
15) Please identify the account number from which the funds originated in order to create the disputed account.
16) Admit, or in the alternative, provide evidence to the contrary that no other account was debited when the disputed account was created.
17) In the event that you deny that no other account was debited when the disputed account was opened or created, please identify the account that was debited by account number and/or any and all identifiers thereof and the name or names of the debited account's signer(s), holder(s) and/or owner(s), and explain how the funds for this account were originated.
18) In the event that you deny that no other account was debited when the disputed was opened or created, state the total balance of this debited account at the time the debit was made; and, list the names of the signer(s) on the account and the date the account was opened along with the opening balance.
19) Admit, or in the alternative, provide evidence to the contrary that Mi J Yun was the Depositor for the account that is the subject matter of this demand for payment of mortgage.

20) Please provide all documents and information, related in any way, to your implication or allegation that a loan was given to Devon Wood, Jean Keating (Mi J Yun)

21) Which employee of the bank, lending institution(s), financing company(ies) authorized the transactions?

22) If the loan origination system, software or other procedures were used in the opening of the disputed account, please identify the system by name and/or identifier and describe how it works.

23) According to the alleged loan agreement, was the purported lender or financial institution(s) involved in the alleged loan to use their own money as adequate consideration to purchase the promissory note from the alleged borrower? **YES** or **NO**

24) According to the bookkeeping entries, did the purported lender or financial institution(s) involved in the alleged loan use their own money as adequate consideration to purchase the promissory note from the alleged borrower? **YES** or **NO**

25) According to the alleged loan agreement, was the purported lender or financial institution(s) involved in the alleged loan to accept anything of value from the alleged borrower that would be used to fund a check or similar instrument in approximately the amount of the alleged loan? **YES** or **NO**

26) According to the bookkeeping entries, did the purported lender or financial institution(s) involved in the alleged loan accept anything of value from the alleged borrower that would be used to fund a check or similar instrument in approximately the amount of the alleged loan? **YES** or **NO**

27) Was the intent of the purported loan agreement that the party that funded the loan should be repaid the money lent? **YES** or **NO**

28) Did the purported lender or financial institution(s) involved in the alleged loan follow Generally Accepted Accounting Principles (GAAP)? **YES** or **NO**

29) Were all material facts disclosed in the written agreement? **YES** or **NO**

30) What was the name and address of any bank auditor or certified public accountant involved with or having any relation to the accounting function regarding the disputed account?

31) Identify the name of the records, system of accounting records or ledgers reflecting the transaction for the disputed account.

32) Were any loan numbers and identifiers to any loan numbers assigned to the disputed account? **YES** or **NO**

33) If you answered YES to the above question, please list those account numbers and identifiers to those account numbers.

34) Explain how each account was created or originated.

35) Explain how the funds for each account were deposited and where they originated.

36) Was an account created with the purported loan amount then debited to fund the disputed account?

37) Please explain your answer to the above question.

38) State the name and address of collector (assignee) of the disputed account.

39) What are the terms of assignment of the disputed account? You may attach a facsimile, email or otherwise of any records relating to such terms.

40) Have any claims been made by any creditor or assignee regarding this account? **YES** or **NO**

41) Have any insurance or re-insurance claims been made by any creditor or assignee regarding this account? **YES** or **NO**

42) Has the purported balance of this account been used in any tax deduction claim? **YES** or **NO**

43) Please produce all records and tangible evidence relating to the questions herein and send them along with your response to the undersigned via the below named Notary Public.

Upon failure or refusal of collector to validate this collection action, demand for payment on mortgage, collector agrees to waive all claims against the debtor named herein. If any reason that COUNTRYWIDE HOME LOAN/BANK OF AMERICA pursuit with collection activity, foreclose the property, COUNTRYWIDE HOME LOAN/BANK OF AMERICA agrees to pay debtor for $10,000,000.00 (one million dollars USD) for damages.

Return these completed questions and attach all assignment or other transfer agreements that would establish your right to collect this debt to third party Notary F.P Niuatoa at 9140 haven Ave. #120, Rancho Cucamonga CA, 91730.  This is a request for validation made pursuant to the Fair Debt Collection Practices Act.  If you do not respond as required by law and within the time granted, you will have stipulated that you have failed to state a claim and are stopped pursuant to, but not limited to 15 USC §1692(g) and You; COUNTRYWIDE HOME LOAN/BANK OF AMERICA, are giving permission for a lien to be filed against you, final damages to be calculated prior to lien and notice to you by claim of lien and invoice.

Without Prejudice, Under Reserve

Signaure affixed IAW UCC§§1-201(39), 3-401(b)(ii)    Devon Wood, Jean Keating

**Third Party Notary:**

Name and Address  : F.P Niuatoa 9140 Haven Ave. #120 Rancho Cucamonga Ca, 91730

### Acknowledgement

State of California        )
                             )

County of San Bernardino  )

On _12 November 2009_ before me, _F. P. Niuatoa   Notary Public_, (name and title of the office), personally appeared _Devin Weal, Jean Keating_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERSURY under the laws of the State of California that the foregoing paragraph is true and correct.

                       WITNESS my hand and official seal.

Signature _F.P. Niuatoa_       (Seal)



F. P. NIUATOA
COMM. # 1843967
NOTARY PUBLIC · CALIFORNIA
SAN BERNARDINO COUNTY
MY COMM. EXP. APR. 10, 2013

# Commercial Affidavit

The undersigned Affiant, Devon Wood, Jean Keating  hereinafter "Affiants", does solemnly swear, declare and sate as follows:

1. Affiant is competent to state the matters set forth herein.
2. Affiant has knowledge of the facts stated herein.
3. All the facts herein are true, correct and complete, and not misleading, admissible as evidence and if called upon as a witness, Affiant will testify to their veracity.

Plain statement of Facts

4. There is no evidence that Affiant has no merit to know who owns the original promissory note. And Affiant believes that none exists; and
5. There is no evidence that COUNTRYWIDE HOME LOAN/BANK OF AMERICA is the holder in due course to enforce the note, and Affiant believes that none exists; and
6. There is no evidence that COUNTRYWIDE HOME LOAN/BANK OF AMERICA has beneficial interest to the original promissory note, and Affiant believes that none exists; and
7. There is no evidence that MERS has any interest in this mortgage loan and is the secured party of record and has sufficient legal basis for standing to foreclose, and Affiant believes that none exits; and
8. There is no recorded assignment of all right, title and interests evidence that COUNTRYWIDE HOME LOAN/BANK OF AMERICA is the holder in due course., and I believe that none exists;
9. There is no evidence that COUNTRYWIDE HOME LOAN/BANK OF AMERICA didn't sell the mortgage loan to depositor with "pay to the order of without recourse" then it was deposited to the Trustee; Deutsche Bank National Trust Company in Santa Ana California.
10. There is no evidence that Affiants request, demand to validate debt is legally baseless claim, and Affiant believes none exists; and
11. There is no evidence that COUNTRYWIDE HOME LOAN/BANK OF AMERICA is not hindering, defrauding, and dishonoring my demand to know the original loan funding process, and Affiant believes none exists; and
12. There is no evidence that I borrowed banks deposit money, and Affiant believes none exists.

_Devon Wood_                Jurat            ˣ _Jean Keating_

State of California          )
                             )
County of San Bernardino     )

Subscribed and sworn to (or affirmed) before me on this _12_ day of _November_, 20 _09_, by _Devon Wood, Jean Keating_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Public Signature


Seal
F. P. NIUATOA
COMM. # 1843967
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
MY COMM. EXP. APR. 10, 2013

## SPECIFIC POWER OF ATTORNEY

The Undersigned, COUNTRYWIDE HOME LOAN/BANK OF AMERICA , hereby appoints Jean Keating at 9530 Spring Brook Ct. Rancho Cucamonga California Republic, [91730] Attorney-in-Fact, hereinafter "Agent."

If Agent is unable to serve for any reason, COUNTRYWIDE HOME LOAN/BANK OF AMERICA designates Devon Wood at 9140 Haven Ave. #120 Rancho Cucamonga California Republic [91730] as the Undersigned's successor Agent.

This Specific Power of Attorney is a self-executing agreement with COUNTRYWIDE HOME LOAN/BANK OF AMERICA 'S signature affixed in accordance with UCC 3-401(b)(ii). Authority is to be assumed upon proof of proper notice and COUNTRYWIDE HOME LOAN/BANK OF AMERICA 'S non-response to Debt Validation, Notice of Conditional Acceptance, and commercial Affidavit by point by point under the penalty of perjury. Such action is to be construed as an endorsement of intent.

My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to:

1.  To prepare and record all necessary documents for proper transfer, release of all rights and interest property via lien release to alleged debtor, Mi J Yun, Devon Wood, Jean Keating.

2.  To use any trademarks, service-marks, emblems, logos and the like for the purpose of authenticating any document when acting on behalf of COUNTRYWIDE HOME LOAN/BANK OF AMERICA .

3.  To prepare and record any and all necessary documents with the Secretary of State, County Recorder, State Court, Federal Court and or Credit Reporting Agencies specifically related to account #96579040.

4.  To prepare and record any and all necessary documents to amend, append, correct, or repair any and all derogatory credit reports made against alleged debtor, on behalf of COUNTRYWIDE HOME LOAN/BANK OF AMERICA , which includes, but not be limited to: all credit reporting agencies, all credit service bureau's, and/or all credit reporting organizations, either public or private.

Agent shall not be liable for any loss resulting from a judgment error made in good faith. However, Agent shall be liable for willful misconduct, and likewise for failure to act in good faith while acting under authority of this Specific Power of Attorney.

COUNTRYWIDE HOME LOAN/BANK OF AMERICA  authorizes Agent to indemnify and hold harmless any third party who accepts and acts under this document.

Agent is entitled to reasonable compensation for any and all services provided while acting in authorized capacity as agent of COUNTRYWIDE HOME LOAN/BANK OF AMERICA . Agent is entitled to reimbursement of all reasonable expenses incurred in connection with this Power of Attorney.

Agent shall provide an accounting for all funds handled and all acts performed while acting in authorized capacity as agent of COUNTRYWIDE HOME LOAN/BANK OF AMERICA  if COUNTRYWIDE HOME LOAN/BANK OF AMERICA  or any authorized personal representative or fiduciary of COUNTRYWIDE HOME LOAN/BANK OF AMERICA , so requests.

This Specific Power of Attorney is effective December 16, 2009, and is not affected by COUNTRYWIDE HOME LOAN/BANK OF AMERICA 'S disability or lack of mental competence, except as may otherwise be provided by applicable statute. This Specific Power of Attorney shall continue in effect for sixty (360) days from effective date, i.e. until all requested information above has been provided by COUNTRYWIDE HOMELAON/BANK OF AMERICA and fully verified and stratified by alleged debtor.  This Specific Power of Attorney may be voided by DEBT COLLECTOR, or Agent, through the proper execution of a Declaration of Satisfied & Closed Account, on or before the active date. An additional sixty (60) days is granted to Agent to cure any matters that may arise out of any action taken under this Specific Power of Attorney. The number of extensions of "an additional sixty (60) days" needed to settle any and all matters arising thereinafter is not set and is at the sole discretion of Agent.

COUNTRYWIDE HOME LOAN/BANK OF AMERICA _____

[Signature affixed in accordance with UCC §§ 1-201(39), 3-401(b)(ii)]

_____

Jean Keating, Devon Wood™/ Attorney-in-Fact/ Agent

## AKNOWLEDGEMENT

STATE OF California                              )
                                                  )ss.
COUNTY OF San Bernardino               )

On _____ before me, _____(name and title of the officer), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
(Seal)

## PROOF OF SERVICE/MAILIN/FAX AND WITNESS OF CONTENTS

### Non Negotiable

I, Kash Bhakta, a third party, having no interest in the contents, or the proceeding represented thereby, of the envelop in which the NOTICE OF COMPLAINT TO US SECURITY EXCHANGE COMMISSION, COMPROLLER OF THE CURRENCY, CALIFORNIA DEPARTMENT OF CORPORATION, CALIFORNIA ATTORNEY GENERAL is enclosed do hereby certify by my hand and signature below that *I have deposited the following documents* contained within the same envelope containing the PROOF OF WITNESS OF CONTENTS AND PROOF OF SERVICE and Mailing documents by United States Mail to:

KEN LEWIS CEO;
BANK OF AMERICA/COUNTRYWIDE HOME LOANS
100 North Tryon Street Charlotte, North Carolina [28202].

RECONSTRUCT COMPANY (TS# 09-0100708)
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, California [93063].

Steve Thompson (CFO)
OneWest Bank Group LLC
888 East Walnut St.
Pasadena CA, 91101

OneWest Bank FSB
IndyMac Mortgage Services
6900 Beatrice Drive
P.O Box 4045
Kalamazoo MI, 49003-4045

TRUSTEE:
Deutsche National Banking Association
Trust Administration GS0502 as spelled out at page 43 of 424b5 Prospectus
1761 East St. Andrew Place,
Santa Ana, California 92705-4934

*MERS Headquarters* Address.
1595 Spring Hill Road Suite 310
Vienna, VA 22182.

*PROOF OF SERVICE/MAILIN/FAX AND WITNESS OF CONTENTS*

*Non Negotiable*

I, Kash Bhakta, a third party, having no interest in the contents, or the proceeding represented thereby, of the envelop in which the herein **GOOD FAITH REQEUST FOR DEBT VALIDATION/NOTICE OF AUDIT NOTICE OF TILA VIOLATION, CA FINANACE CODE, NOTICE OF CRIMINAL ACT UNDER CALIFORNAI RENAL CODE 484, USC TITLE 18 § 1348, NOTICE OF COMPLAINT TO US SECURITY EXCHANGE COMMISSION, COMPROLLER OF THE CURRENCY, CALIFORNIA DEPARTMENT OF CORPORATION, CALIFORNIA ATTORNEY GENERAL** is enclosed do hereby certify by my hand and signature below that *I have deposited the following documents* contained within the same envelope containing the **PROOF OF WITNESS OF CONTENTS AND PROOF OF SERVICE and Mailing** documents by United States Mail to:


**COUNTRYWIDE/BANK OF AMERICA**
**PO BOX 5170**
**SIMI VALLEY CA, 93062**

**RECONTRUST COMPANY**
**1800 TAPO CANYON RD**
**SIMIVALLEY CA 93063**


I declare upon my own commercial liability under penalty of perjury under the laws of the united States of America that the foregoing is true, correct, and complete.

Kash Bhakta

Dated: _12 NOV 2009_

3rd Party Witness and Server

Kash Bhakta
15611 North Peak Lane
Fontana Ca, 92336

Page 1 of 1